**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PRAIRIE BAND POTAWATOMI NATION,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN T. MNUCHIN, in his official capacity as SECRETARY, UNITED STATES DEPARTMENT OF THE TREASURY,<br><br>Defendant. | Case No. 1:20-CV-01491-APM |

**<u>AMICUS BRIEF OF THE GILA RIVER INDIAN COMMUNITY, THE PENOBSCOT NATION, THE MORONGO BAND OF MISSION INDIANS, AND THE NOTTAWASEPPI HURON BAND OF THE POTAWATOMI
IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

The Gila River Indian Community, the Penobscot Nation, the Morongo Band of Mission Indians, and the Nottawaseppi Huron Band of the Potawatomi oppose the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) ("Motion") for the reasons stated herein.[1]  Regardless of the merits of Plaintiff's complaint about Treasury's method for allocating the first tranche of the Tribal government portion of the Coronavirus Relief Fund (the

---

[1] No party's counsel authored this brief in whole or in part, and no party or person other than the amici themselves contributed money intended to fund preparing or submitting the brief.

1

"Fund"), Plaintiff did not bring its Motion in a timely manner and cannot show irreparable harm. The harm Plaintiff seeks to avoid is due to Plaintiff's own delay in seeking relief, not Treasury's plan to belatedly distribute the remaining CARES Act funding for Tribal governments on Friday. The remaining payments are already badly overdue. The relief Plaintiff seeks would harm hundreds of other Tribal governments with equitable interests that this Court has already recognized, and would be contrary to the public interest and statutory requirements. Accordingly, the Motion should be denied and Treasury should distribute the remaining funds as planned on Friday, June 12, 2020.

## BACKGROUND

The factual background for this case is already familiar to the Court and is touched on only in passing here. In the midst of a global COVID-19 pandemic that has both hampered and placed massive new demands on state, local, and Tribal governments, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act" or "Act"), Pub. L. 116-136 (Mar. 27, 2020). Under the Act, Treasury is required to pay $8 billion to Tribal governments, no later than April 26, 2020, to cover increased, unanticipated, necessary governmental expenditures caused by the COVID-19 pandemic. *See* 42 U.S.C. § 801(b)(1); *Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-CV-01136 (APM), 2020 WL 2331774, at *1 (D.D.C. May 11, 2020) (Mehta, J.).

It must be acknowledged at the outset that Treasury's process for allocating and distributing CARES Act funds for Tribal governments has been characterized by missteps, a dearth of clear and effective communication, and disregard for statutory criteria and requirements. For example, as this Court noted in related litigation on April 27, 2020, "there is no indication on the present record that the agency has considered data that matches the actual statutory criteria for disbursement of Title V funds to Tribal governments," namely, "increased expenditures of each

such Tribal government" for fiscal year 2020. *Confederated Tribes of Chehalis Reservation v. Mnuchin*, No. 20-CV-01002 (APM), 2020 WL 1984297, at *8 n.9 (D.D.C. Apr. 27, 2020) (Mehta, J.) Treasury instead asked for unrelated data from Tribal governments, communicated its request in broadly worded terms, failed to provide requested clarifications such that hundreds of Tribal governments could not possibly respond in a uniform fashion, and then blamed Tribal governments for the predictable result (after the data Tribal governments submitted was leaked to the public). Treasury's first tranche distribution was based on tribal population, a criterion absent from the statute. *Compare* 42 U.S.C. § 801(c)(7) *with* 42 U.S.C. § 801(c)(1)–(5) (States receive a minimum payment of $1,250,000,000, plus a pro rata adjustment based on population) *and* 42 U.S.C. § 801(c)(6) (the District of Columbia and territories each receive a fixed amount based on population).

Treasury has followed a similar pattern in the second tranche. Treasury's requests for tribal data have lacked specificity, it has failed to respond adequately for requests for clarification, and it has offered unwarranted post hoc criticisms of Tribal governments' efforts to meet Treasury's shifting and inadequately explained requests for data. *See* Plaintiffs' Renewed Motion For Preliminary Injunction, *Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-CV-01136 (APM), Doc. 37, at 2 n.1. Treasury has also purported to turn a statutory "consultation" process for data collection into a grant *application* process that would deny funding to Tribal governments that do not meet Treasury's demands. *See id.* at 2 n.2. Although Treasury itself has acknowledged some problems with its process in hindsight, these were largely foreseen by Tribal governments and foreseeable by Treasury. It is to be lamented that in administering the Fund, Treasury has at times treated Tribal governments as untrusted and unworthy supplicants rather than federally recognized sovereigns entitled to statutory funding. Moreover, as this process has worn on,

Treasury has treated the statutory deadline of April 26, 2020, more as an aspirational guideline than as a command from Congress to meet the acknowledged urgent needs of Tribal governments.

Notwithstanding all this, it is undisputed that Treasury clearly announced the matter at issue here on May 5, 2020. On that date, Treasury publicly announced that the first $4.8 billion distributed from the Fund was then being distributed using "Tribal population data used by the Department of Housing and Urban Development (HUD) in connection with the Indian Housing Block Grant (IHBG) program." Doc. 2-7 at 2. Plaintiff's complaint and Motion were filed over one month later, on June 8, 2020.

## ARGUMENT

This Court has summarized the relevant legal standards for preliminary injunctive relief:

> Preliminary injunctive relief is an "extraordinary and drastic remedy" that is "never awarded as [a matter] of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations and internal quotation marks omitted). A court may only grant the "extraordinary remedy . . . upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Specifically, Plaintiffs must show that they are: (1) "likely to succeed on the merits"; (2) "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted). Where the federal government is the opposing party, the balance of equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

*Agua Caliente,* 2020 WL 2331774, at *3. Courts in this circuit evaluate these four factors on a sliding scale. *Id.* "Though plaintiffs are not absolved of their burden to make an independent showing on each of the four factors, the sliding scale approach 'allow[s] that a strong showing on one factor could make up for a weaker showing on another.'" *Id.* (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). As shown below, Plaintiff cannot make an independent showing on the second factor or the merged third and fourth factors, and therefore the Motion should be denied.

I.  **PLAINTIFF CANNOT SHOW IRREPARABLE HARM WOULD BE CAUSED BY THE PAYMENTS IT SEEKS TO ENJOIN**

Plaintiff has not shown and cannot show that Treasury's imminent disbursement of the second tranche of CARES Act funding to Tribal governments is the legal cause of the irreparable harm it alleges. Plaintiff does not argue that Treasury is now about to distribute funds too *quickly* under some relevant legal standard (weeks after the statutory deadline for distribution has already passed). Nor does it allege that Treasury's second-tranche methodology is flawed in itself. Rather, Treasury allocated and distributed the *first* tranche using the methodology Plaintiff now challenges. And Plaintiff is seeking to use the second-tranche funds as a source of remedy for this prior harm. Even if the Court could remediate otherwise irreparable harm to the Plaintiff by issuing the injunction Plaintiff seeks, so as to preserve second-tranche funds as a source of remedy, that would not make Treasury's imminent second tranche payments the *cause* of Plaintiff's irreparable harm. And even assuming that such a remedy would be permissible, only Plaintiff's own delay has created the situation where that remedy may no longer be available absent an injunction.[2]

In seeking extraordinary equitable relief, it is not enough for a plaintiff to allege that it will suffer some irreparable harm absent relief. Rather, Plaintiff must show that such harm would actually be caused by a wrongful act to be enjoined. "[T]he moving party must establish causation. That is, it 'must show that the alleged harm will directly result from the action which the movant seeks to enjoin.'" *Dallas Safari Club v. Bernhardt*, No. 19-CV-03696-APM, 2020 WL 1809181, at *4 (D.D.C. Apr. 9, 2020) (Mehta, J.) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Here, the wrongful act of which Plaintiff complains is the May 5, 2020 allocation

---

[2] Plaintiff does not address whether the funds currently set aside for Alaska Native corporations would be an adequate source of remedy if ANCs do not ultimately receive them.

announcement and distribution based on HUD population metrics. The injury caused by that alleged wrongful act was complete in the first week of May.

If Plaintiff had brought its complaint and motion promptly in the second week of May—or even in the third week of May, after the May 18, 2020 publication of the Harvard Study it cites—this Court could have granted relief (if warranted) and Treasury could have complied with the Court's order without delaying payments past June 12, 2020. *See* Doc 2-13 at 3 ("Our suspicions that we had been underfunded were confirmed on May 18, 2020, when we were made aware of a Harvard Report dissecting the Title V funding allocation methodology."). The "short delay" Plaintiff now seeks, Motion at 25, would not have been necessary. Plaintiff is not now entitled to an injunction merely because it delayed seeking relief until four days before the last possible moment.

More generally, causation aside, delay in seeking relief weighs against a finding of irreparable harm. In an oft-cited case, the D.C. Circuit held that a 44-day delay in seeking an injunction *pendente lite* was "inexcusable" and supported a finding of no irreparable injury. *Fund for Animals v. Frizzell,* 530 F.2d 982, 987 (D.C. Cir. 1975). Plaintiff's month-long delay here is comparable. "Courts have found that '[a]n unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm.'" *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) (quoting *Newdow v. Bush,* 355 F. Supp. 2d 265, 292 (D.D.C. 2005) and collecting cases in accord). Although the D.C. Circuit has held that "a late filing" is not "on its own" a determinative ground for denying a preliminary injunction, "untimely filings may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong." *Gordon v. Holder*, 632 F.3d 722, 724–25 (D.C. Cir.

2011). Here, Plaintiff's "substantial delay stands in stark contrast to the high bar Plaintiffs must clear to show irreparable harm." *Dallas Safari Club*, 2020 WL 1809181, at *7.

Because Plaintiff has failed to meet the high standard of showing that an injunction would prevent irreparable injury caused by the first-tranche allocation it challenges, the Motion should be denied.

II. **THE EQUITIES AND THE PUBLIC INTEREST WEIGH AGAINST AN INJUNCTION BECAUSE THE PLAINTIFF BELATEDLY SEEKS TO DELAY PAYMENTS TO HUNDREDS OF OTHER TRIBAL GOVERNMENTS**

The Motion should be denied for the further reason that Plaintiff, a single Tribal government, belatedly seeks relief that would indefinitely hold up payments to hundreds of other Tribal governments who are blameless. Plaintiff offers no equitable justification for delaying payments to these other Tribal governments so that its own payment can be recalculated according to a different formula.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). As noted above, Plaintiff would not have needed any delay in second-tranche payments beyond June 12 if it had brought suit promptly after announcement of the May 5, 2020 decision that it challenges. Plaintiff offers no reason why other Tribal governments should pay the price for Plaintiff's own delay. It would be grossly inequitable and against the public interest to rescue Plaintiff from its own inexcusable delay by withholding urgently needed funding for hundreds of other Tribal governments. This is particularly true where Congress has already determined that these funds should have been distributed by April 26, 2020. Any additional delay would be in further derogation of this statutory requirement.

The equities and public interest further weigh against Plaintiff because the relief it seeks would cause disproportionate harm for relatively little benefit, even assuming the merits in Plaintiff's favor.  Plaintiff alleges that it may be entitled to $7.6 million in additional funding, Motion at 10, yet to preserve such a remedy, it would have this Court delay payments of up to $3.8 *billion*.  Although Plaintiff senses this is a problem and suggests that Treasury could withhold only "sufficient funds in reserve to re-allocate funds on an enrollment basis," it does not offer an estimate of this amount, and it ultimately asks this Court without limitation to "restrain[] Secretary Mnuchin from disbursing CARES Act funds to Tribal governments until further order of this Court."  Motion at 26.

Plaintiff posits that delaying payments will "smooth out" distribution of CARES Act funding because such funds may permissibly cover costs incurred at any time during the last ten months of 2020, and "[s]ixty percent of that period will not elapse until the end of August."  Motion at 26.  This sterile, abstract reasoning ignores the obvious real-world fact that many Tribal governments need the entire amount of CARES Act funding *now* because the harms and costs imposed by the pandemic are already overwhelming, and are not spaced evenly over a ten-month period in obedience to Congress's statutory outer limit.  Nor in any event would many Tribal governments agree that the $8 billion in CARES Act funding is adequate for a ten-month period, such that the first tranche funds could be expected to last until the end of August.  Further, some Tribal governments who received too little funding in the first tranche are expecting much more in the second, and would be crippled by further delay.  Plaintiff claims that it "litigates this issue in its own capacity and for the benefit [of] Tribal governments across the country which may be similarly situated," Motion at 25, but it remains a solitary plaintiff seeking to delay payments to hundreds of other Tribal governments.

Tribal governments across the country can now see that the $8 billion provided in the CARES Act for their needs is woefully inadequate to address this pandemic. They can also recognize that Treasury has simply not been up to the task of working with Tribal governments as fellow sovereigns aligned in the common interest of defeating this pandemic. At this point, the best path forward is not to litigate these issues in federal court in an effort to divide the limited resources that have been made available and to force Treasury to do the right thing. This will only result in additional delay in Tribal governments' ability to protect their citizens. The Motion should be denied, and Tribal governments should with a common voice seek more funds from Congress with direct instructions to Treasury as to how to disburse it.

## CONCLUSION

While amici agree that Treasury has pursued a flawed allocation process to date that has predictably resulted in some Tribal governments receiving far too much funding and others far too little, the Motion should be denied because Plaintiff has not shown irreparable harm caused by the wrongful acts it alleges rather than its own delay, and because the funding delay it now seeks would cause profound unjustified harm to other Tribal governments.

RESPECTFULLY SUBMITTED this 10th day of June 2020.

    Donald R. Pongrace (D.C. Bar No. 445944)

    */s/ Merrill C. Godfrey*
    Merrill C. Godfrey (D.C. Bar No. 464758)
    Akin Gump Strauss Hauer & Feld, LLP
    2001 K Street, N.W.
    Washington, D.C. 20006
    (202) 887-4000
    dpongrace@akingump.com
    mgodfrey@akingump.com

    *Attorneys for the Gila River Indian Community, the Penobscot Nation, and the Nottawaseppi Huron Band of the Potawatomi*


    */s/ Merrill C. Godfrey for Kimberly A. Cluff with permission*
    Kimberly A. Cluff (CA Bar No. 196139)
    In-House General Counsel
    Morongo Band of Mission Indians
    12700 Pumarra Road
    Banning, CA  92220
    (951) 849-4697
    KCluff@morongo-nsn.gov

    *Attorney for the Morongo Band of Mission Indians*