UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PRAIRIE BAND POTAWATOMI NATION<br><br>Plaintiff,<br><br>v.<br><br>STEVEN MNUCHIN, in his official capacity as Secretary of the Treasury,<br><br>Defendant. | Case No. 20-cv-1491 |

# DECLARATION OF DANIEL KOWALSKI

I, Daniel Kowalski, hereby do state and declare as follows:

1. I currently serve as Counselor to the Secretary at the United States Department of the Treasury (Treasury). I am authorized to make this declaration and do so on the basis of both my personal knowledge and information made available to me in my official capacity.

2. I have been delegated the authority by the Secretary of the Treasury (Secretary) to perform the following disbursement-related functions as required under Title V of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act): (a) making payments under Title V of the CARES Act, and (b) certifying any payment instructions or executing any documents necessary to carry out the making of payments described above.

3. At the Secretary's direction, I manage the Treasury staff responsible for making payments under Title V of the CARES Act, and I act on behalf of Treasury to consult with the Department of the Interior as well as Tribal organizations, in accordance with Treasury's obligations under the statute.

4. On April 2 and April 9, 2020, I participated in telephonic Tribal consultations with tribal leaders that included approximately 1700 callers on each consultation. I do not recall making any statement expressing a preference for any distribution based on population.

5. In order to perform the necessary analysis to allocate payments from the Coronavirus Relief Fund (the Fund) among Tribal governments, Treasury requested that each Indian Tribe submit certain data about itself via Treasury's website in the form of a certification (OMB Approved No. 1505-0264) (Certification). The types of information Treasury requested in these Certifications included the number of citizens, members, or, in the case of native corporations, shareholders; number of land acres held; employment data; and expenditure information for the most recently completed fiscal year.

6. Treasury encountered numerous issues with the Certifications, including duplicated or triplicated submissions, missing submissions, and incomplete submissions. These posed an obstacle to making payments in a timely manner based on population information derived from the Tribal submissions.

7. Furthermore, Treasury determined that tribal enrollment figures submitted by the Tribes did not provide a consistent measure across Indian Tribes because Indian Tribes counted enrollment in various ways.

8. Treasury considered various alternative sources of population data for Indian Tribes, including tribal enrollment data provided by the Bureau of Indian Affairs and the American Community Survey 5-Year Estimates for tribal areas.

9. Ultimately Treasury determined that tribal enrollment was not the most appropriate basis for payment because tribal enrollment does not distinguish between members living within the tribal area from those living outside the tribal area. Treasury viewed this consideration as particularly significant for determining the formula Treasury would use to allocate payments from the Fund among Tribal governments (the Allocation Formula) because it believed Tribal governments would be best positioned to make necessary expenditures due to the public health emergency for the area of a Tribal government's jurisdiction and where it provides services.

10. Treasury did not use American Community Survey 5-Year Estimates (ACS) data because the ACS sampling and weighting is based at the county level and, because tribal areas are sub-county entities, the tribal population can fluctuate substantially from year-to-year

11. Treasury ultimately used the Decennial Census data on American Indian Alaska Native (AIAN) population that is used in the Indian Housing Block Grant (IHBG) program (IHBG data) administered by the U.S. Department of Housing and Urban Development

(HUD). Treasury determined that this population data would be expected to correlate reasonably well with the amount of increased expenditures of Tribal governments related directly to the public health emergency, such as increased costs to address medical and public health needs.

12. At the time of Treasury's determination, Treasury considered the following factors: (1) the IHBG formula was developed through negotiated rulemaking with Indian Tribes, and Indian Tribes had provided input into the IHBG data; (2) the IHBG formula contains an order of preference for allocating the IHBG data for Indian Tribes in Alaska, and that, therefore, using IHBG data would mitigate the risk of "double-counting" Alaska Natives; and (3) the IHBG data had been used in other funding formulas that disburse payments to Indian Tribes (for example, the funding formula under the Tribal Transportation Program is calculated, in part, using IHBG data). Additionally, Treasury considered that IHBG data includes the concept of a "formula area" which corresponds broadly with the area of a Tribal government's jurisdiction, where it provides services, and include adjustments to address overlapping jurisdictions.

13. On May 5, 2020, Treasury began making payments to Tribal governments based on the population component of the Allocation Formula. Treasury made the determination to distribute 60 percent, or approximately $4.8 billion, of the $8 billion reserved for Tribal governments based on population.

14. On June 4, 2020, Treasury posted, on its website, a document titled "Frequently Asked Questions on Tribal Population," which explained the reasons Treasury chose to rely on IHBG population data.

15. Treasury is working diligently to distribute the balance of the appropriation (40 percent of the $8 billion reserved for Tribal governments) quickly and accurately, based on employment data and expenditures data gathered from a second request for information from Tribal governments.

16. During the period from May 5, 2020 (the date on which Treasury staff began making payments to Tribal governments) to date, Treasury staff has worked long hours, including nights and weekends, to respond to questions from Indian Tribes, create and post a second request for information, conduct follow up and outreach to collect missing or incomplete information from Indian Tribes, correct and verify data received, and develop an allocation formula for the remaining 40 percent to be distributed, all in a concerted effort to make payments to Tribal governments starting this Friday, June 12th.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 10, 2020
Washington, D.C.

*Daniel Kowalski*
Daniel Kowalski
Counselor to the Secretary
United States Department of the Treasury
1500 Pennsylvania Ave. NW
Washington, D.C. 20220