## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| **PRAIRIE BAND POTAWATOMI NATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 20-cv-1491 (APM)** |
| | ) | |
| **STEVEN MNUCHIN, in his official capacity as** | ) | |
| **Secretary of Treasury,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Prairie Band Potawatomi Nation asks the court on an emergency basis to enjoin the Secretary of Treasury from disbursing the remaining 40% of $8 billion that Congress allocated under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to assist Tribal governments combat the COVID-19 pandemic. *See* Pl.'s Mot., ECF No. 2. The Secretary intends to start disbursing those funds, which total $3.2 billion, as early as tomorrow, Friday, June 12, 2020, *see* Mem. in Response to Pl.'s Mot., ECF No. 16, at 3, or by no later than Monday, June 15, 2020, *see* Draft 6/11/2020 Hr'g Tr. at 3–5. Plaintiff contends that the Secretary's initial 60% distribution of CARES Act funds to Tribal governments was arbitrary and capricious under the Administrative Procedure Act (APA), because it relied exclusively on a population data set from the Department of Housing and Urban Development that undercounted Plaintiff's tribal population and, consequently, resulted in a $7.65 million underfunding of its proportionate share of CARES

Act funds.  *See generally* Pl.'s Mot.  For the reasons that follow, Plaintiff's motion for injunctive

relief is denied.[1]

 *First*, Plaintiff fails to demonstrate a likelihood of success on the merits.  In *Lincoln v.*

*Vigil*, the Supreme Court stated that, "as long as [an] agency allocates funds from a lump-sum

appropriation to meet permissible statutory objectives, § 701(a)(2) [of the APA] gives the courts

no leave to intrude.  'To that extent,' the decision to allocate funds 'is committed to agency

discretion by law.'"  508 U.S. 182, 193 (1993) (citing 5 U.S.C. § 701(a)(2)) (cleaned up); *see also*

*Physicians for Social Responsibility v. Wheeler*, 956 F.3d 634, 642 (D.C. Cir. 2020) (observing

that a "presumption of non-reviewability" attaches to an agency's "allocation of funds from a

lump-sum appropriation") (internal quotation marks omitted).  *Lincoln* squarely applies here.

Congress appropriated a lump-sum of $8 billion in CARES Act relief, and directed that "the

Secretary shall determine, in consultation with the Secretary of the Interior and Indian Tribes,"

amounts paid to Tribal governments "based on increased expenditures of each such Tribal

government . . . relative to aggregate expenditures in fiscal year 2019 by the Tribal government . .

. and determined in such manner as the Secretary determines appropriate" as to ensure full

distribution of the appropriated sum.  42 U.S.C. § 801(c)(7).  Congress gave the Secretary no

further guidance on how to allocate the emergency relief funds.  The CARES Act thus contains no

"statutory reference point" by which to judge the Secretary's decision to use HUD's population

data set, as opposed to some other.  *Drake v. FAA*, 291 F.3d 59, 72 (D.C. Cir. 2002).  Indeed, as

Plaintiff conceded during argument, the CARES Act does not require the Secretary to even

---

[1] Of necessity, the court's Order is not as expansive as it ordinarily would be.  The court therefore incorporates by reference the factual background and the injunction standard set forth in *Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-cv-01136 (APM), 2020 WL 2331774 (D.D.C. May 11, 2020), and *Confederated Tribes of Chehalis Reservation v. Mnuchin*, No. 20-cv-01002 (APM), 2020 WL 1984297 (D.D.C. Apr. 27, 2020).

consider population data, let alone population data of a particular kind.  *See* Draft 6/11/2020 Hr'g

Tr. at 26–27.  The court therefore lacks jurisdiction to consider Plaintiff's challenge.

*Milk Train, Inc. v. Veneman*, 310 F.3d 747 (2002), does not compel a different result.

There, the D.C. Circuit held that the Secretary of Agriculture's disbursement of funds appropriated

to cover milk producers' "economic losses incurred during 1999" was reviewable, where the

plaintiff claimed that the Secretary was using 1997 and 1998 data to calculate 1999 losses.  *Id.* at

752.  Plaintiff makes no comparable allegation here.  It does not allege that the Secretary allocated

CARES Act funds for anything other than their stated statutory purpose—to assist Tribal

governments to combat the COVID-19 pandemic during the year in which those expenses were

incurred.

Plaintiff's assertion that the Secretary failed to "consult" with Tribes before using the HUD

data is also unreviewable.  *See* Pl.'s Mot. at 20–24.  The CARES Act says nothing about how the

Secretary should go about consulting with Indian Tribes, what topics he should address, or with

what frequency.  *See* 42 U.S.C. § 801(7) ("[T]he Secretary shall determine, in consultation with

the Secretary of the Interior and Indian Tribes, [an amount] that is based on increased expenditures

of each such Tribal government . . .").  The mere requirement to consult therefore offers no

"meaningful standard[] to cabin the agency's otherwise plenary discretion," *Drake*, 291 F.3d at

71, and accordingly, the Secretary's claimed adequate consultation cannot be reviewed.

*Second*, equity favors rejecting emergency relief when a plaintiff unjustifiably delays in

bringing suit.  *See Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) (stating that "[a]n

unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such

delay implies a lack of urgency and irreparable harm").  Here, the Secretary announced on May 5,

2020, that he had used the HUD data, instead of tribal enrollment figures, to make the first round

of payments to Tribal governments.   Thus, the gravamen of Plaintiff's complaint—that the Secretary utilized a different methodology than proposed during consultation with the Tribes and one not based on tribal enrollment—was known to Plaintiff since the Secretary's announcement. Plaintiff did not bring suit, however, until over a month later on June 8, 2020, on the eve of the Secretary's distribution of the second tranche of CARES Act funds.  *See* Compl., ECF No. 1. Plaintiff's reasons for its delay, *see* Draft 6/11/2020 Hr'g Tr. at 28–30, are unpersuasive.   The studies by the Harvard Project on American Indian Economic Development, which Plaintiff claims caused it to realize the extent of its underfunding, were released on May 18, 2020, and May 22, 2022.  *See* ECF Nos. 2-17, 2-18.  Yet, Plaintiff waited more than two weeks to bring suit after the second study's release, knowing full well that the Secretary was actively working towards distributing the balance of CARES Act funds.  Plaintiff's unjustified delay forecloses emergency relief.

*Third*, the public interest would be harmed by the requested injunction.  Plaintiff seeks to halt all further CARES Act payments to Tribal governments "pending the Court's consideration of the merits of this action."  Proposed Order, ECF No. 2-19.  But it would be patently unfair to make Tribal governments wait any longer to receive the remaining CARES Act funds.   The Secretary already has well surpassed the 30-day period within which Congress ordered the distribution of emergency relief to Tribal governments.  *See* 42 U.S.C. § 801(b)(1); *see generally Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-cv-01136 (APM), 2020 WL 2331774 (D.D.C. May 11, 2020).  And the Secretary, finally, is on the cusp of distributing those funds.  The public interest clearly favors the distribution of $3.2 billion now, and not until after this belatedly filed dispute—involving a meaningful but relatively small amount for one tribe—is resolved.[2]

---

[2]  The court also declines to order the Secretary to withhold the claimed underfunded amount of $7.65 million when it is clear that the Secretary's challenged distribution of a lump-sum appropriation is unreviewable.

For the foregoing reasons, Plaintiff's motion for injunctive relief is denied.

Dated:  June 11, 2019

_____
Amit P. Mehta
United States District Court Judge